# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed March 9, 1920.

JOSEPH T. BARRON, ADMINISTRATOR OF THE ESTATE OF BRIDGET AGNES OWENS, LATE OF BALTIMORE CITY, DECEASED,

VS.

CATHERINE M. REARDON.

*Read A. McCaffrey* for plaintiff.
*William E. Hoffman* for defendant.

DAWKINS, J.—

There are but two questions that need serious consideration in this case:

1. Whether or not the decedent was mentally incapacitated at the time the gifts were made; and

2. If mentally capable of knowing what she was doing, then whether or not in view of the close and confidential relationship existing between the decedent and the defendant, the gifts should be allowed to stand on account of the influence exerted in view of such relationship.

An old lady, about eighty years of age, after the death of her husband, which took place eight or nine years before her own death, was quite alone, being without children. She appears to have been possessed of a strong will and of an independent nature. Her nearest relatives seemed to have been, when she became a widow, as well as at the time of her death, a large number (about seventeen) of nieces and nephews. The old lady lived at first, when she became a widow, with one of the nieces who appears to have been kind to her. After that she lived for a while with strangers. Subsequently, about five years before her death, she took up her home with the defendant, one of the nieces, with whom most devoted relations had existed since the childhood of the defendant.

The aunt drew her money out of several banks during the period that she lived with the defendant in varying amounts, until shortly before the aunt's death orders, some of which, if not all, appear to have been signed some time before they were used, to turn over to the defendant all of the bank balances standing in the aunt's name. The final orders, for convenience, will be called herein "turn-over orders."

The amount appearing to be in bank when the aunt commenced to live with the defendant seems to have been about $9,000. The amount represented by the turn-over orders is about $4,800. The bill here seeks to set aside the gifts and conveyances and to require the defendant to turn over the money obtained and to render an account of the same, alleging that the gifts were made shortly before the death of the decedent, when in her advanced age, suffering as she was from mental and physical infirmities, together with senile debility, she was

unable to execute a valid deed or contract or transact any business. The further charge is made that the gifts were made as a result of fraud, deception, coercion and improper influences exerted upon the decedent. It is also charged that the defendant took the property with the intention of making distribution of it among those entitled, but has failed to do it. It is therefore claimed that for the reasons stated, in view of the confidential relations existing between the decedent and the defendant, the gifts should not stand.

There can be little question but that the various amounts drawn from bank during the period of over five years that the deceased lived with the defendant, even if gotten by the defendant, were not an excessive amount for the board and maintenance of the old lady, so that the only sums about which there could be any question are those that were comprehended in the turn-over orders.

With confidential relations such as were existing between the parties, the one in bed for nearly a year before her death, in feeble health, in the house of the other, with but little opportunity to discuss business with any one else save the defendant or her immediate family, the burden is upon the defendant to prove to the satisfaction of the court that the gifts were the free, deliberate and voluntary acts of the donor and made by her with full knowledge as to the effect and operation of the same.

The precise limit of confidential relations can not be very well defined. Each case must depend upon its own facts. The law is fairly well settled in Maryland. Of the numerous cases, a few among those cited at the hearing may be referred to in a brief manner.

The case of Todd vs. Grove, 33 Md. 188, is probably one of the leading cases in this State. In that case an old man, blind and crippled, asked his brother, who had not been close to him, to come from Illinois to Maryland and live with him and attend to his business. He came in October, 1866, and attended to the business until the old man's death in December, 1866. In that short time securities aggregating a large amount were transferred to the brother. The donor had two other brothers, a wife, nephews, nieces and grandchildren, who had lived in the house with him. It was shown that donee, while preparing to come to Maryland, had in words said that he would exert an influence to the prejudice of the wife. The transfer was not permitted to stand.

In the case of Williams vs. Williams, 63 Md. 372, the influence of a strong father over a son in a state of intoxication is the ground for setting aside a deed made while that close relationship existed.

In 102 Md. 441 (Horner Case), a feeble old lady gave deeds divesting herself of all of her property some years before she died. The deeds were not placed on record until after her death. A nominal consideration was named. The conveyances had the effect of practically giving all that she had to her son-in-law, who had had no claim upon her bounty, ignoring her own son, who had lived with her. There was executed a confirmatory deed some time after the first deed, also a paper carefully prepared to forestall any action to set aside the deeds. Nothing was shown indicating that the deeds were read to or by the deceased, or that she had any knowledge of the contents. No apparent reason was shown why the conveyances were made to the grantee. In this state of facts the conveyances were set aside.

Further reverting to the facts in this case, it might be said that there nearest of kin of the deceased consists, as heretofore stated, of a large number, nearly 20, of nephews and nieces, all legally equally having a claim upon her bounty, but actually having no claim by reason of intimacy or affection, save in the case of one of the nieces. Except on the part of two or three of them, none of them are shown to have visited the old lady during her lifetime or to have paid little or any attention to her. While there is some evidence that there might have been a willingness to render attention, yet, save for the assistance rendered by Mrs. Walsh in the last six weeks before the end, no one outside of the defendant and her family seem to have done anything for the old lady. Before coming to the home of Mrs. Reardon to live, the deceased lived once with Mrs. Walsh, but she paid full board and room rent. The defendant seemed to have taken her in when no one else manifested any desire to have

her. The old lady seems to have been of a rather strong mind, well able to take care of herself. The only suggestion of any indication of any intention to give anything to anyone other than as she gave it was that Mrs. Reardon said that her aunt had left her money so that it would be divided up between the sisters. There was some such disposition, to a very small extent, indicated in a will made a few years prior to the death of the aunt. This will was destroyed by the old lady herself for the reason given that she wanted to prevent a contest over what she had. There is no evidence of any great change in conditions until shortly before the end. She had suggested that the orders be signed and ready to take to the bank. The witness probably did not sign at the time, but the signatures certainly do not indicate in any way serious weakness or incapacity. There is no evidence of coercion, fraud or improper influence save the influence of tenderness and kindness. In the conflict of testimony as to conditions of mind and body I feel there is no safer one upon whom to depend than Dr. Jones, who saw the old lady very often. He says she talked well, read the Sun until January before she died —on February 3; discussed topics of the day, had a keen mentality up to the last of January (after all these orders were signed); showed no neglect, but received attention that prolonged life; talked intelligently a few days before her death; knew what she was doing, etc.

The only evidence of mental weakness offered by the plaintiff, prior to a short time before death, was that she took things without reason some years ago. This was not so pronounced as to indicate a real weakness in view of her subsequent sale of the ground rent and the talk to Mr. Bealmer in 1914, when she told him what she intended to do for Mrs. Reardon.

Her ever-constant affection towards Mrs. Reardon and expressions of the same to various people; the making of the will in favor of Mrs. Reardon in 1916, and later tearing it up and signing the orders, indicate a fixed and settled purpose for Mrs. Reardon to have her money, even if some persons were refused admission to her room and if she failed to recognize persons at times, and at times had to be fed, etc.

I can find no evidence to establish the allegations of the bill, or to indicate that on account of mental or physical infirmity or senile debility that the decedent was incapable of executing a valid gift, or that she was coerced or unduly influenced into making it, or that any fraud or deception was practiced upon her, or that the defendant received the money for distribution. The defendant has met the burden of proof that the law places upon her by showing that from this large number of somewhat distant relatives the decedent has selected the one for her bounty who has merited recognition at her hands in return for kindness bestowed and services rendered. A manifestation of love and gratitude that had apparently existed through the years.

The bill is dismissed.